STATE OF NORTH CAROLINA v. WILLIAM PAUL MARLOW

No. 199PA83

(Filed 3 April 1984)

1. **Criminal Law § 91— request for voluntary discovery—tolling of statutory speedy trial period**

A criminal defendant's request for voluntary discovery tolls the running of the statutory speedy trial period pursuant to G.S. 15A-704(b)(1) until the occurrence of the earlier of the following events: (1) the completion of the requested discovery; (2) the filing by the defendant of a confirmation of volun-

tary compliance with the discovery request; or (3) the date upon which the court, pursuant to G.S. 15A-909, has determined that discovery would be completed.

**2. Criminal Law § 91— statutory speedy trial—exclusion of period of discovery**

Where defendant, after his arrest for murder in March 1981 but prior to his indictment in September 1981, filed a comprehensive request for discovery on 10 June 1981; the district attorney, upon receiving certain laboratory reports on 23 October, complied with defendant's discovery request at a 10 November 1981 meeting with defense attorneys; and the State's efforts positively to identify the corpus deliciti and to gather evidence incriminating defendant were severely and intentionally complicated by defendant's surreptitious attempt to conceal his criminal acts, the State's delay in providing discovery was justifiable and reasonable, and the period of discovery time between defendant's indictment in September and the completion of discovery on 10 November will be excluded from the statutory speedy trial period.

**3. Criminal Law § 91— formal joinder for trial—delay caused by co-defendant's physical incapacity—exclusion from statutory speedy trial period**

Defendant and a co-defendant were not formally joined for trial until the State made an oral motion for joinder on the date of trial, and a period of delay caused by the co-defendant's physical incapacity could not properly be excluded from defendant's statutory speedy trial period under G.S. 15A-701(b) (4) and (6).

**4. Criminal Law § 92— oral motion for joinder**

The district attorney's motion to join two defendants' cases for trial, made at the beginning of trial, came within the purview of G.S. 15A-951(a) and was thus not required to be in writing, since the language, "upon written motion of the district attorney," found in G.S. 15A-926(b)(2), applies only in those instances in which joinder of defendants is requested prior to trial.

**5. Criminal Law § 92.1— joint trial—defenses not antagonistic**

A joint trial of defendant and a co-defendant on a murder charge did not deny defendant a fair trial on the ground that he and the co-defendant presented antagonistic defenses where defendant claimed self-defense and the co-defendant's defense related to duress and coercion by defendant, since these defenses did not rise to the level of antagonistic defenses which would prevent the jury from rendering a fair adjudication of defendant's individual guilt.

**6. Criminal Law § 92— denial of joinder for trial—protection of right to speedy trial**

As used in the statute providing that the court must deny a joinder for trial if "it is found necessary to protect a defendant's right to a speedy trial," G.S. 15A-927(c)(2)a, the language "right to a speedy trial" refers to defendant's constitutional right to a speedy trial and not to his statutory right.

**7. Constitutional Law § 30— speedy trial—pre-indictment delay—delay between indictment and trial**

A delay of 147 days between defendant's indictment and trial on a murder charge did not, standing alone, constitute an unreasonable and prejudicial

delay so as to violate defendant's constitutional right to a speedy trial. Nor was an additional delay of six months between defendant's arrest and indictment unreasonable so as to violate defendant's constitutional right to a speedy trial where the State required more time to gather evidence and to present its case to the grand jury because of the condition of the victim's body and the attempted destruction of evidence. Sixth Amendment to the U.S. Constitution.

### 8. Constitutional Law § 30— speedy trial—faded memory

A general allegation that a delay caused defendant's memory to fade is insufficient to carry defendant's burden of showing prejudice from the delay. Rather, defendant must show that the resulting lost evidence or testimony was significant and would have been beneficial to his defense.

### 9. Homicide § 20.1— photographs of deteriorated body

Photographs of a homicide victim's body were not inadmissible for illustrative purposes because they showed only a deteriorated body and a witness had already testified that the body was in an advanced state of decomposition when found several months after the crime.

### 10. Bills of Discovery § 6— fingerprints—failure to provide to defendant

Evidence of a homicide victim's fingerprints were not inadmissible because they appeared on a piece of acetate which had not been furnished to defendant during voluntary discovery where defendant had received a copy of the report from the fingerprint expert.

### 11. Criminal Law §§ 79.1, 89.3— guilty plea by State's witness—prior consistent statements

The trial court in a murder case did not err in permitting the prosecutor to ask a State's witness on redirect examination if she had pled guilty to the offense of accessory after the fact of murder where the question was propounded for the purpose of eliciting evidence of prior consistent statements by the witness.

### 12. Criminal Law § 162.5— failure to move to strike portion of answer—waiver of objection

Failure to move to strike a portion of an answer, even though the answer is objected to, results in waiver of the objection.

### 13. Criminal Law § 71— use of word "murder"—shorthand statement of fact

An officer's testimony in a murder case that the occupants of the house where the murder allegedly occurred moved from the house "several months after the murder" was competent as a shorthand statement of fact.

### 14. Criminal Law § 85— limiting number of character witnesses

The trial court did not abuse its discretion in limiting defendant to four character witnesses, especially where the record does not reflect what the fifth character witness would have said if allowed to testify.

**15. Homicide §§ 28.1, 30.2— second degree murder—failure to instruct on self-defense and manslaughter**

The trial court in a second degree murder prosecution did not err in failing to instruct on self-defense, defense of others and manslaughter where the evidence showed without contradiction that defendant and another male stood in the doorway of the room where the victim lay either sleeping, unconscious, or pretending to be unconscious; the two men did all they could to arouse the victim, including setting off firecrackers in the bedroom; after they could not arouse the victim, the defendant expressed disgust by cursing and then pulled a gun out and shot the victim in the head five times; the victim made no sounds or movements prior to being shot; and there was no testimony that defendant was in any danger.

**16. Criminal Law § 99.11— court's interruption of jury argument—no expression of opinion**

The trial court did not express an opinion in interrupting defense counsel's jury argument that defendant would not be guilty of murder if he had just cause or excuse and in stating that there was no evidence of justification or excuse.

Justice EXUM dissenting.

ON petition for discretionary review of the decision of the Court of Appeals, 61 N.C. App. 300, 300 S.E. 2d 567 (1983), vacating defendant's conviction of second degree murder and remanding the cause to superior court; judgment entered by *Rousseau, J.*, at the 8 February 1982 Criminal Session of Superior Court, WILKES County.

Defendant was tried upon an indictment, proper in form, charging him with the second degree murder of Dennis Philmore Wyatt. Upon the jury finding the defendant guilty of second degree murder, the trial court sentenced him to an imprisonment of forty (40) years minimum, forty-five (45) years maximum. On appeal, the Court of Appeals held that the defendant's statutory right to a speedy trial had been violated and that he had been improperly joined for trial with co-defendant Tena Marion. We allowed the State's petition for discretionary review on 18 April 1983.

The State's evidence tended to show that in the fall of 1980, defendant was living with Ricky Marion, his wife Tena Marion and their small child in Elkin, North Carolina, and had been residing with them for several months. Defendant had known the Marions since 1979.

During the month of July 1980, the deceased Dennis Philmore Wyatt met Sharon Short in Michigan, and subsequently began living with her. In August 1980, Wyatt and Short traveled to North Carolina. Upon their arrival Wyatt and Short spent several nights sleeping either in the car or in various motels. They occasionally shared the motel rooms with other people, including Ricky and Tena Marion and a man known as Carlos. Wyatt and Ricky Marion had become acquainted earlier during their simultaneous incarceration in a North Carolina prison. During this period the deceased Wyatt supported himself and Short by selling LSD and caffeine pills.

In September of 1980, the deceased Dennis Philmore Wyatt, Sharon Short and the man named Carlos moved into the two bedroom home shared by the Marions and the defendant. Carlos left shortly thereafter.

For the next three weeks following the move of Wyatt and Short into the Marion house, up to the time of the killing on 28 September 1980, Wyatt, the defendant and Ricky Marion constantly drank intoxicating beverages. At times Wyatt and the defendant injected wine into their veins with a syringe.

On 28 September 1980, an argument erupted between Sharon Short and the deceased Wyatt, whose behavior became violent and abusive. The group decided that Wyatt had to leave and thereupon escorted the resisting Wyatt to his mother's house. After leaving Wyatt there, the Marions, Short and defendant returned to the Marion house approximately three hours later, having spent the intervening time drinking several pitchers of beer and shooting billiards at a local pool hall.

Shortly after their arrival at the Marion residence, they discovered Wyatt lying face upward on a bed in the bedroom previously shared by Wyatt and Short. The defendant and Ricky entered the room and attempted to arouse Wyatt. Although Ricky "hollered and shook him a little bit" Wyatt did not move. Ricky left defendant watching Wyatt in the bedroom while he secured some firecrackers. He threw at least two lighted firecrackers under the bed. Wyatt did not respond or make any sound or movement. Immediately thereafter the defendant said "F— this s—," pulled out a gun and shot the victim Wyatt in the head. Upon hearing defendant cock the gun, Ricky fled the room.

He told the two women that "Paul's (defendant) gone crazy," and that "He's shot him." They heard several more gunshots. An autopsy disclosed that the deceased had five bullet holes in his head and died as a result.

Thereupon, the defendant Marlow walked into the bedroom where the other three stood dazed. He told the group they were "all in this thing together." He further stated that first degree murder carries a life sentence and they were just as involved as if they had shot Wyatt like he had. Defendant then encouraged Ricky to "go in there and shoot him with that old big gun," referring to Ricky's Army .45 caliber pistol.

The group placed Wyatt's body in the trunk of a car, drove onto the Blue Ridge Parkway, stopped, and threw the body into a creek. They then drove to another location where they burned not only the victim's clothes, but also the sheets used to wrap the body and Ricky Marion's shoes. They returned to the Marions' house where the defendant remade the bed on which the victim was killed, lay on the bed and went to sleep.

Wyatt's body was found in a stream by a fisherman in the North Carolina mountains on 17 February 1981. A warrant was issued for the arrest of the defendant on 17 March 1981 and executed the next day. The defendant was indicted on 14 September 1981. The trial commenced during the week of 8 February 1982.

Other facts necessary to the decision of this case will be discussed in the opinion.

*Attorney General Rufus L. Edmisten by Assistant Attorney General Richard L. Kucharski, for the State.*

*Samuel C. Evans, for the defendant.*

COPELAND, Justice.

The State brings forward two assignments of error addressing the two issues ruled upon by the North Carolina Court of Appeals. That court held that the defendant's statutory right to a speedy trial had been violated and that he also had been improperly joined for trial with co-defendant Tena Marion. For the reasons discussed below, we find error with regard to the Court

of Appeals' determination of the speedy trial issue, but not with their improper joinder holding.

The defendant, in his brief to this Court, not only replied to the State's two assignments of error, but also brought forth issues presented to the Court of Appeals, which that court deemed unnecessary to reach or determine in light of their ruling. In the interest of justice, we shall address these remaining issues, none of which, however, constitute prejudicial error.

The record discloses that on 8 February 1982, prior to trial, defendant presented several motions to the trial court, including the motion to dismiss for violation of the Speedy Trial Act. At the hearing on this motion to dismiss the State offered evidence tending to show that at the trial term immediately preceding the 8 February 1982 term, co-defendant Tena Marion was in the late stages of pregnancy and, as such, was not physically able to withstand the rigors of a lengthy murder trial. The State also tendered evidence that Wilkes County was a county with a limited number of court sessions.

After hearing all the evidence, the trial court made several findings of fact, including a delineation of the specific terms of court in Wilkes County and the types of cases calendared. The court also found that co-defendant Tena Marion was pregnant at the December term and expected to give birth to a child sometime in January 1982 and did deliver the child on 1 January 1982; that the District Attorney did not place the case on the trial calendar for the week of 14 December 1981 because he felt that the pregnant defendant was unable to stand trial at that time; and that the next session following the December term of court was 8 February 1982.

The trial court concluded:

(T)hat the defendant has failed to show wherein he has been prejudiced in the delay of his trial or the delay in his indictment and has failed to show that the State deliberately failed to prosecute and that the Court concludes that the defendant has not shown any constitutional right or any constitutional denial of the right to a speedy trial. The Court further concludes that since the date of the indictment, September the 14th, 1981, that inasmuch as the codefendant, Tena Marion,

was expecting to deliver childbirth, that the time from December 14th, 1981 to February the 8th, should be excluded for the reason that the codefendant was not physically able to appear in court; and the Court further concludes by excluding this time from the date of indictment the defendant has not been denied his statutory right to a speedy trial. Therefore, the defendant's motion to dismiss is denied.

First, the State contends that the Court of Appeals erred in holding that the defendant's statutory right to a speedy trial had been violated. Under North Carolina's Speedy Trial Act, N.C. Gen. Stat. § 15A-701(a1), "[t]he trial of the defendant charged with a criminal offense shall begin . . . (1) [w]ithin 120 days from the date the defendant is arrested, served with criminal process, waives an indictment, or is indicted, whichever occurs last." If the defendant is not tried within the time prescribed, then the charge shall be dismissed, pursuant to N.C. Gen. Stat. § 15A-703(a).

According to the record, defendant's trial commenced on 8 February 1982, 147 days after the issuance of the indictment. The 120 day period expired on 12 January 1982. However, the State argues that the exclusions provided in N.C. Gen. Stat. §§ 15A-701 (b)(1), (4), (6) and (8) apply to the case *sub judice* and serve to bring this trial within the required 120 day period.

Under the provisions of N.C. Gen. Stat. § 15A-701(b)(1) the trial court may exclude "[a]ny period of delay resulting from other proceedings concerning the defendant . . ." from the 120 day period in which a criminal defendant must be tried. Although this provision enumerates certain specific proceedings which may be excluded from the statutory period, this section explicitly provides that this list is not inclusive, to wit, the statutory exclusion is not limited to these listed proceedings. Thus, the legislature has deemed it appropriate, in this particular instance, to allow judicial discretion when the ends of justice would be served.

The State urges this Court to interpret N.C. Gen. Stat. § 15A-701(b)(1) as excluding discovery time from the 120 day period. With particular regard to the case at bar, the State argues that the excludable period should run from the time of the indictment, 14 September 1981, until at least the time the district attorney received the final laboratory report on 23 October 1981. Such an interpretation, of course, would bring this defendant's

trial well within the 120 day period. Never before has our Court determined the effect a defendant's request for discovery would have upon the Speedy Trial Act.

The basic purpose of the Speedy Trial Act is to provide for the efficient administration of justice, which, according to our legislature, is best effectuated through a prompt determination of a criminal defendant's guilt or innocence. The Act's delineation of specific time limits and exclusions serves as a guideline for processing cases, and thus provides a technical defense for criminal defendants. This statute is quite distinguishable from a defendant's Sixth Amendment fundamental right to a speedy trial under the United States Constitution, and in no way should it be interpreted as a bar to this constitutional right. See N.C. Gen. Stat. § 15-704. We shall discuss this distinction in more detail later in this opinion.

While the Speedy Trial Act explicitly defines the specific procedural limitations and exclusions, it also provides, by way of Section 701(b)(1), a means with which the courts could augment the types of proceeding which should merit exclusion.

[1] After careful consideration, we have determined that the Speedy Trial Act's rule of exclusion, specifically subsection (b) of section 701, should include the period of delay resulting from a defendant's request for discovery. This excludable discovery period shall commence upon the service of defendant's motion for request for discovery upon counsel for the State, and shall encompass only such time which occurred after the speedy trial period has been triggered. In this case, the excludable time began upon the issuance of an indictment on 14 September 1981. Thereupon, the statutory time, within which the trial of a criminal case must begin, would cease to run until the occurrence of the earlier of the following events: (1) the completion of the requested discovery; (2) the filing by the defendant of a confirmation of voluntary compliance with the discovery request; or (3) the date upon which the court, pursuant to N.C. Gen. Stat. §15A-909, has determined that discovery would be completed. This holding is consistent with our purpose to ensure a fair and judicious determination of the issues. Without possession of all the vital information to which he is entitled, the defendant could possibly be deprived of the benefit of necessary evidence. Presumably, a defendant would

not be ready for trial until the needed material was received. Furthermore, there are various circumstances in which the investigative process is hindered by the secretion, disposition or attempted elimination of evidence by not only interested parties, but also by innocent persons unaware of the significance of such information.

Our decision to exclude discovery time does not force the defendant to anxiously await, at the mercy of the State, the completion of discovery within a reasonable time. The State remains bound not only by requirements of good faith to proceed in a timely manner, but also by the defendant's ability to compel earlier discovery, pursuant to N.C. Gen. Stat. § 15A-909. Under this statute, a defendant may petition the court to declare a specific time, place and manner for completing discovery. If the defendant pursues this available course of action, then, of course, the statutory time begins to run again upon the court ordered date of compliance.

[2] The record before us reveals that the defendant, after his arrest in March, but prior to his indictment in September, filed a comprehensive request for discovery on 10 June 1981. Included in this request were the results of various laboratory examinations conducted by the State Bureau of Investigation. The district attorney, upon receiving these relevant and material laboratory reports on 23 October 1981, complied with defendant's discovery request at the 10 November 1981 meeting with the defense attorneys. We find the delay in providing discovery was reasonable, especially considering the unusual circumstances involved in this case. The State's efforts to positively identify the *corpus delicti* and the evidence incriminating the defendant were severely and intentionally complicated by the defendant's surreptitious attempt to conceal his criminal acts. The defendant and his co-defendants disposed of the victim's body by throwing it into a creek. Approximately five months later, an unsuspecting fisherman discovered the badly decomposed body. Items of evidence linking the defendants to the killing were burned by the defendants. These conscious acts of concealment serve to support our conclusion that the delay prompted by the discovery process was justifiable as well as reasonable. In accordance with our determination to allow discovery time as an excludable period, we hold that the defendant tolled the Speedy Trial Statute with his 10 June 1981 re-

quest for discovery. However, because this discovery request was filed prior to the running of the speedy trial clock, which was started by the issuance of the indictment in September, we shall not consider, for the purpose of exclusion, discovery time which occurred prior to the commencing of the Speedy Trial Statute. We shall exclude only that portion of time, resulting from the ongoing discovery proceedings, which occurred after the issuance of the indictment. The defendant's receipt on 10 November 1981 of the discovery material from the district attorney triggered the running of the Speedy Trial Statute. Thus, upon excluding the time from 14 September to 10 November 1981, defendant's trial was properly held within the statutory 120 day period.

Inasmuch as we are holding that the trial occurred within the statutory time period, it is not necessary that we discuss the State's claim of exclusion based on Wilkes County's limited number of court sessions.

The State next contends that the Court of Appeals erred in its determination that the trials of defendant and his co-defendant Tena Marion had been improperly joined. Prior to trial the defendant filed a written motion to dismiss based upon constitutional and statutory speedy trial grounds. Nothing concerning the issue of the joinder of the co-defendants was raised in that motion, nor is there any evidence in the record of a motion to sever. In orally arguing defendant's motion to dismiss at trial, the defense attorney again failed to raise a claim of improper joinder. He objected only to the trial court's finding of fact that co-defendant Tena Marion was not physically able to stand trial. Because the State orally moved during the pre-trial hearing to consolidate the trials of the defendants, it is apparent that counsel for these defendants had adequate notice of the district attorney's intention to try these defendants together for the murder of the deceased Wyatt. However, counsel for defendant sufficiently preserved defendant's objection to the consolidation by joining in co-defendant Ricky Marion's objection to the State's motion to consolidate the trials.

This issue of joinder is an important aspect in two of the State's arguments. First, the State proposes that a combined reading of N.C. Gen. Stat. § 15A-701(b)(4) and (6) results in a permissible period of exclusion to the Speedy Trial Act. Subsection

four (4) provides that a period of delay resulting from the mental or physical incapacity of a defendant may be excluded. Subsection six (6) excludes a delay when the defendant is joined for trial with a co-defendant for whom the time for trial has not run, provided that no motion for severance has been granted.

Thus, the State argues, the delay caused by Tena Marion's pregnancy is specifically excludable in determining defendant's speedy trial time period as long as the two parties were joined in a manner which satisfies N.C. Gen. Stat. §§ 15A-701(b)(6) and 15A-926. The Court of Appeals held that the trial judge erred in excluding the time which resulted from the joinder, since defendant Marlow and Tena Marion were not formally joined as co-defendants between 14 December 1981 and 8 February 1982.

[3] A determination of the question of whether the delay, resulting from the joinder of the co-defendants, should be excluded from the defendant Marlow's 120 day period is not necessary, in light of our previous holding that defendant had been tried within the statutory speedy trial time limit. However, the Court of Appeals correctly held that the defendant and Tena Marion were not formally joined until 8 February 1982, when the State made its oral motion for joinder. Thus, the time period from 14 December 1981 until 8 February 1982 could not properly be excluded from the defendant's statutory 120 days.

The second aspect concerning the issue of joinder which the State argues involves the propriety of joining for trial two or more co-defendants pursuant to N.C. Gen. Stat. § 15A-926. Under the foregoing statute, joinder is proper when each defendant is charged with accountability for the same offense. *See also State v. Lake*, 305 N.C. 143, 286 S.E. 2d 541 (1982). The charges against each co-defendant directly pertained to the murder of Dennis Wyatt, the victim in this case.

[4] Defendant presents his contention that N.C. Gen. Stat. § 15A-926 precludes the making of an oral motion for joinder by the State. Based on the following reasoning, the State's motion for joinder need not be encompassed in a formal writing when made during a hearing or trial.

In determining the necessity of a formal written motion for joinder prior to trial, we must read N.C. Gen. Stat. § 15A-926(b)(2)

in *pari materia* with N.C. Gen. Stat. § 15A-951(a)(1). Section 926(b)(2) states that "upon written motion of the prosecutor, charges against two or more defendants may be joined for trial. Section 951(a)(1) in pertinent part provides that a motion must *"unless made during a hearing or trial,* be in writing." (Emphasis added.)

In *State v. Slade,* 291 N.C. 275, 229 S.E. 2d 921 (1976) we held that the district attorney's motion to join defendants for trial, made at the beginning of trial, came within the purview of N.C. Gen. Stat. § 15A-951(a), and thus was not required to be in writing. We interpreted the language, "[u]pon written motion of the district attorney," found in section 926(b)(2) to apply "only in those instances in which joinder of defendants is requested prior to trial." *Id.* at 282, 229 S.E. 2d at 926.

The defendant complains that because the consolidation not only prevented him from obtaining a fair trial but also violated his right to a speedy trial, his motion to sever should have been granted according to N.C. Gen. Stat. § 15A-927(c)(2)a. "Ordinarily, motions to consolidate cases for trial are within the sound discretion of the trial court, . . . and absent a showing that the joint trial has deprived an accused of a fair trial, the exercise of the court's discretion will not be disturbed on appeal." (Citations omitted) *State v. Barnett,* 307 N.C. 608, 619, 300 S.E. 2d 340, 346 (1983).

[5] Defendant argues that the joint trial denied him a fair determination of guilt or innocence because he and the other co-defendants presented antagonistic defenses. The record discloses that all the defendants pled not guilty, and the evidence and testimony given by the State's witnesses as to the criminal offense in question was consistent, free from material conflicts.

We said in an opinion by Justice Exum in *State v. Nelson,* 298 N.C. 573, 587, 260 S.E. 2d 629, 640 (1979), *cert. denied,* 446 U.S. 929 (1980), that under N.C. Gen. Stat. § 15A-927(c)(2) antagonistic defenses do not necessarily warrant severance. "The test is whether the conflict in defendants' respective positions at trial is of such a nature that considering all of the other evidence in the case, defendants were denied a fair trial." *Id.; see State v. Boykin,* 307 N.C. 87, 296 S.E. 2d 258 (1982).

Defendant Marlow maintained a claim of self-defense as justification for the murder, while Tena Marion's defense related to duress, coercion and fear of the defendant Marlow. These defenses, though different, did not rise to the level of antagonistic defenses which would prevent the jury from rendering a fair adjudication of defendant's individual guilt.

[6] Finally with regard to this assignment of error concerning joinder, we must address the Court of Appeals erroneous application of N.C. Gen. Stat. § 15A-927(c)(2)a, which reads as follows:

(2) The court, on motion of the prosecutor, or on motion of the defendant other than under subdivision (1) above must deny a joinder for trial or grant a severance of defendants whenever:

a. If before trial, it is found necessary to protect a defendant's right to a speedy trial, or it is found necessary to promote a fair determination of the guilt or innocence of one or more defendants;

The Court of Appeals reasoned that in order to protect the defendant's right to be tried within 120 days of indictment under N.C. Gen. Stat. § 15A-701(a1), the trial court would have to deny the State's motion for joinder. Such an interpretation of section 927(c)(2) would render absolutely meaningless the 701(b)(6) exclusion of delays for a defendant who is joined for trial with a co-defendant for whom the time for trial has not run.

We must assume that our Legislature in enacting the Speedy Trial Act, which includes section 701, was aware of the pre-existing section 927(c)(2). We must also assume that the legislature did not intend to do a vain act. Therefore, it is our belief that the provision "right to a speedy trial" found in section 927, refers to the defendant's constitutional right to a speedy trial, not his statutory right. This interpretation allows a harmonious existence between these statutes, and returns discretion to trial courts.

We conclude that the trial court did not abuse its discretion in joining the defendant and his co-defendants at trial. This assignment of error is overruled.

[7] Defendant also asserts a violation of his Constitutional Sixth Amendment right to a speedy trial. He claims that the State's intentional and capricious delaying of his indictment and trial unduly prejudiced him.

In considering whether a defendant has been denied his constitutional right to a speedy trial, we must consider factors such as the length of delay, reason for the delay, defendant's assertion of his right, and the resulting prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 33 L.Ed. 2d 101 (1972); *State v. Hill*, 287 N.C. 207, 214 S.E. 2d 67 (1975).

We do not find the length of the delay, a period of 147 days from the indictment to trial, inordinate or oppressive. This amount of time, standing alone, is insufficient to constitute an unreasonable and prejudicial delay. *State v. Shelton*, 53 N.C. App. 632, 281 S.E. 2d 684 (1981), *disc. rev. denied*, 305 N.C. 306, 290 S.E. 2d 707 (1982). Nor do we find the additional period of delay between defendant's arrest and indictment to be unduly overbearing and unreasonable. We must emphasize that the better practice is one where the indictment and arrest procedures occur within a short time of each other. In this case, it appears that due to the condition of the victim's body and the attempted destruction of the evidence the State may have required more time to gather the evidence to present its case to the grand jury.

We have held that "[t]he burden is on an accused who asserts denial of his constitutional right to a speedy trial to show that the delay was due to the neglect or willfulness of the prosecution." (Citations omitted.) *State v. Tann*, 302 N.C. 89, 94, 273 S.E. 2d 720, 724 (1981). The trial court determined that the State had not deliberately failed to prosecute the action and that defendant's Sixth Amendment right to a speedy trial had not been violated. Upon a careful review of the record and briefs, we agree that there is insufficient evidence of intentional and calculated delay.

[8] The defendant asserted his speedy trial right five days before trial. However, he failed to prove actual and substantial prejudice. Defendant alleges that the delay caused his memory to fade. In *State v. Dietz*, 289 N.C. 488, 223 S.E. 2d 357 (1976), we held that a defendant's *general* allegation of faded memory was insufficient to carry his burden of showing prejudice from the delay. The defendant must show that the resulting lost evidence or

testimony was significant and would have been beneficial to his defense. This assignment of error is without merit.

We shall now address the defendant's remaining assignments of error which were not adjudicated by the Court of Appeals.

[9] Defendant would concede that "in a homicide prosecution photographs showing the condition of the body when found, its location when found, and the surrounding scene at the time the body was found are not rendered incompetent by the portrayal of the gruesome events which the witness testifies they accurately portray." *State v. Elkerson,* 304 N.C. 658, 665, 285 S.E. 2d 784, 789 (1982). Defendant argues, however, that "[i]n the subject case the deceased had been slain several months before discovery and the photographs show only a deteriorated body," and because a witness had already testified that the body was in an advanced state of decomposition, the photographs had no probative value. We disagree. The photographs were relevant for identification purposes as they depicted tattoos on various portions of the victim's body. Furthermore, just as a stipulation as to cause of death does not render photographs irrelevant, likewise photographs are rendered no less relevant simply because a witness testifies as to what the photographs in fact depict. *See State v. Calloway,* 305 N.C. 747, 291 S.E. 2d 622 (1982). This assignment of error is without merit.

[10] The defendant next contends that the trial court erred in admitting evidence of the victim's fingerprints. The fingerprints appeared on a clear piece of acetate which had not been furnished to the defendant during voluntary discovery. Prior to trial, however, the defendant had received a copy of the report from the fingerprint expert. Thus, had defendant considered it necessary to inspect the actual fingerprints before trial, he was on notice of their existence and could have requested an inspection. This assignment of error has no merit.

[11] Defendant further contends that the trial court erred in allowing the State to ask a witness for the State if she had pled guilty to the offense of accessory after the fact of murder. The question was asked on redirect examination in an effort to establish that the witness, Sharon Short, had made statements which were consistent with her trial testimony. The defendant, however, characterizes the question as an effort by the State to impeach its

own witness and argues that the error is prejudicial in that "in the eyes of the jury, in order for Ms. Short to be guilty of accessory after the fact of murder, defendant Marlow must be guilty of murder." It is the defendant who is in error here. The question was not propounded for the purpose of impeachment, but rather to elicit evidence of a prior consistent statement, a proper subject on redirect examination. *See State v. Williams*, 305 N.C. 656, 292 S.E. 2d 243, *reh. denied*, 103 S.Ct. 839 (1982). Furthermore, in *State v. Rothwell*, 308 N.C. 782, 786, 303 S.E. 2d 798, 801 (1983) we stated:

> (E)vidence of a co-defendant's guilty plea is not competent as evidence of the guilt of the defendant standing trial. Thus, if such evidence is introduced for that illegitimate purpose— solely as evidence of the guilt of the defendant on trial—it is not admissible. Our case law indicates, however, that if evidence of a *testifying* co-defendant's guilty plea is introduced for a *legitimate* purpose, it is proper to admit it. In *State v. Potter*, 295 N.C. 126, 244 S.E. 2d 397 (1978), this Court held that it was not error to admit into evidence a co-defendant's testimony concerning his guilty plea when the State elicited that testimony on redirect examination in order to bolster the witness' credibility after the defendant, on cross-examination, had called the witness' credibility into question.

The assignment of error is overruled.

[12, 13] Defendant's next contention concerns testimony by an S.B.I. agent in which the witness used the word "murder." It is defendant's position that the witness was thereby permitted to express an opinion "on the question before the jury." Although defendant objected to the answer as given, he failed to move to strike. Failure to move to strike a portion of an answer, even though the answer is objected to, results in waiver of the objection. *See State v. Chatman*, 308 N.C. 169, 301 S.E. 2d 71 (1983); *State v. Jordan*, 305 N.C. 274, 287 S.E. 2d 827 (1982). Furthermore, in the context of the question, the witness's answer, including his use of the word "murder," may be classified as a shorthand statement of fact. The witness was asked when the Marions had moved from a particular house and the witness replied "several months after the murder." The inference drawn by the witness flowed naturally and logically from the facts and cir-

cumstances about which he testified. *See State v. Martin,* 309 N.C. 465, 308 S.E. 2d 277 (1983); *see also State v. Corbett,* 307 N.C. 169, 297 S.E. 2d 553 (1982) (witness's use of the words "rape" examination and "rape" kit held to be a shorthand statement of fact); *State v. Porter,* 303 N.C. 680, 281 S.E. 2d 377 (1981) (witness's testimony that he had been "robbed" properly admitted as a shorthand statement of fact). The assignment of error is overruled.

[14]   As his next assignment of error defendant argues that the trial court erred in limiting him to four character witnesses "when this defendant had already used three character witnesses and the other two codefendants had not called any character witnesses." The record discloses that the defendant had, in fact, called four character witnesses, but had he not been limited, a fifth character witness would have been called. The record does not reflect what the fifth character witness would have said if allowed to testify.

Defendant concedes that "[g]enerally a trial court may, at its discretion, limit the number of witnesses a party may call," but argues that "the ruling by the Court must not materially affect the rights of the parties." Inasmuch as defendant has failed to reveal the nature of the excluded testimony, he has shown no prejudice. *State v. Wilson,* 304 N.C. 689, 285 S.E. 2d 804 (1982). Even assuming that this testimony would have been favorable to the defendant, it would have been merely cumulative in light of the testimony of his other four character witnesses. The trial judge has discretion to control how far the parties may go in cor- roborating witnesses on collateral matters in a trial. *State v. White,* 307 N.C. 42, 296 S.E. 2d 267 (1982). Thus, the trial judge acted well within his authority in excluding the testimony.

[15]   It is defendant's contention that the trial judge erred by not including self-defense, defense of others and manslaughter in his charge to the jury. We disagree.

In order to justify the submission of an instruction on perfect self-defense it must be shown that, at the time of the killing

(1) it appeared to defendant and he believed it to be necessary to kill the deceased in order to save himself from death or great bodily harm; and

(2) defendant's belief was reasonable in that the circumstances as they appeared to him at the time were sufficient to create such a belief in the mind of a person of ordinary firmness; and

(3) defendant was not the aggressor in bringing on the affray, i.e., he did not aggressively and willingly enter into the fight without legal excuse or provocation; and

(4) defendant did not use excessive force, i.e., did not use more force than was necessary or reasonably appeared to him to be necessary under the circumstances to protect himself from death or great bodily harm.

*State v. Bush,* 307 N.C. 152, 158, 297 S.E. 2d 563, 568 (1982).

With respect to the submission of an instruction on imperfect self-defense, in *Bush* we stated that:

Imperfect self-defense arises when only elements (1) and (2) in the preceding quotation are shown. Therefore, if the defendant believed it was necessary to kill the deceased in order to save himself from death or great bodily harm, and the defendant's belief was reasonable because the circumstances at the time were sufficient to create such a belief in the mind of a person of ordinary firmness, but the defendant, although without murderous intent, was the aggressor or used excessive force, the defendant would have lost the benefit of perfect self-defense. In this situation he would have shown only that he exercised the imperfect right of self-defense and would remain guilty of at least voluntary manslaughter. *State v. Wilson,* 304 N.C. 689, 695, 285 S.E. 2d 804, 808 (1982). However, both elements (1) and (2) in the preceding quotation must be shown to exist before the defendant will be entitled to the benefit of either perfect or imperfect self-defense.

*Id.* at 159, 297 S.E. 2d at 568.

Applying this law to the facts, we do not believe that the evidence supports the submission of the requested instructions on self-defense, defense of others, or manslaughter. The evidence shows without contradiction that the defendant and another male stood in the doorway of the room where the victim lay either sleeping, unconscious, or pretending to be unconscious. The two

men did all they could to arouse the victim, including setting off firecrackers in the bedroom. After they could not arouse the victim, the defendant expressed disgust by cursing and then "pulled the gun out and shot (the victim)" in the head five times with a pistol. The victim made no sounds and no movements prior to being shot. There was no testimony that defendant was in any danger. It is clear that the defendant placed himself at the doorway of the bedroom and attempted to arouse the victim. Nor is there any evidence that the defendant acted in the heat of passion. In short, the evidence points unerringly to the fact that the killing was intentional and that defendant did not have a reasonable fear for his safety; that the defendant was the aggressor and that the force used was excessive. The assignment of error is without merit.

Defendant argues that the trial court erred by not allowing into evidence character evidence about the deceased with regard to his alleged reputation for violence and dangerousness.

This assignment is entirely based upon defendant's claim that he was entitled to an instruction on self-defense. Since we have concluded that he is not entitled to an instruction on self-defense, this assignment of error is without merit and overruled.

[16] Finally the defendant argues that Judge Rousseau erred by interrupting the closing argument of defense counsel.

The transcript does not contain the closing argument of defense counsel and the alleged interruption. The transcript does, however, disclose the following:

MR. EVANS: So with that regard, Your Honor, I'd just like for the record to show that while I was arguing with regard to excuse, justification or just cause, I was interrupted and instructed by you that there was no evidence of just cause, excuse or justification in this case.

COURT: Well, let the record show that you were arguing to the jury something to the effect that he would not be guilty if he had some just cause, excuse or justification—

MR. EVANS: That's correct.

COURT: — And I interrupted you and said there is no evidence of any justification or excuse. All right, Sir.

Disregarding the confusion engendered by defense counsel's failure to include the closing argument and the alleged interruption in the record, and assuming that defense counsel took exception to the interruption or requested a curative instruction, we nevertheless find no error.

In *State v. Smith,* 305 N.C. 691, 292 S.E. 2d 264, *cert. denied,* 74 L.Ed. 2d 622 (1982), Judge Fountain made statements in the jury instructions similar to those allegedly made in this case during defense counsel's closing argument. We stated in that opinion:

> First, we do not believe that Judge Fountain's reference to the *complete absence* of certain evidence constituted an impermissible opinion upon a controverted fact. Rather, the contested statement was merely a legal recognition, correctly made upon the record, that the State's evidence had not disclosed the presence of just cause or adequate provocation to excuse the killing and that the defendant had not fulfilled his burden of going forward with or producing any such evidence either . . .

> Secondly, there is no indication that Judge Fountain's statement wrongfully or absolutely withdrew from the jury's consideration any circumstances which might have tended to negate premeditation, deliberation or malice in the charged killing, . . . . Simply put, there is no reason to believe that the jury was misled or confused by the trial court's remark; thus, we can perceive no ascertainable prejudice to defendant in any event.

*Id.* at 703, 292 S.E. 2d at 272.

This last assignment of error is without merit and overruled.

Defendant has received a fair trial and a fair sentence free of prejudicial error.

The opinion of the Court of Appeals is reversed.

Reversed.

Justice Exum dissenting.

The majority's holding that a criminal defendant's request for voluntary discovery *automatically tolls* the running of the statutory speedy trial period until the state voluntarily responds finds no support in the statute, N.C. Gen. Stat. § 15A-701, or in reason; and it seriously undercuts the policy of the Speedy Trial Act and the criminal discovery statutes, N.C. Gen. Stat. § 15A-902, *et seq.*

The majority relies on that part of the Speedy Trial Act which provides:

(b) The following periods shall be excluded in computing the time within which the trial of a criminal offense must begin:

(1) Any period of delay resulting from other proceedings concerning the defendant including, but not limited to, delays resulting from:

a. A mental or physical examination of the defendant, including all time when he is awaiting or undergoing treatment or examination, or a hearing on his mental or physical capacity; or

b. Trials with respect to other charges against the defendant;

c. Interlocutory appeals; or

d. Hearings on any pretrial motions or the granting or denial of such motions.

N.C. Gen. Stat. § 15A-701(b). All of the listed "proceedings" involve court action. This is what makes them "proceedings." A request for voluntary discovery and the state's voluntary response thereto is not a "proceeding" within the meaning of the statute inasmuch as it involves no court action.

The statute requires that the proceeding be, in fact, the cause of a period of delay before that period is excluded from the statutory period. It provides that the period of delay must *result from* the proceeding in question. In holding that a motion for change of venue tolled the running of the statutory period until

the motion could be determined, we noted in *State v. Oliver*, 302 N.C. 28, 42, 274 S.E. 2d 183, 192 (1981):

> The state is in fact stymied in its scheduling of any case for trial until a ruling is made on such a motion. A motion for change of venue so long as it is pending must necessarily delay the setting of a case for trial until it is determined, and this is so whether the determination be soon after the 120-day period begins to run or at some later time within the period. We believe the legislature intended through G.S. 15A-701(b)(1)(d) to exclude from the 120-day speedy trial period all time reasonably required to determine any motion the determination of which must be made before a case can be scheduled for trial. A motion for change of venue, as we have noted, is such a motion.

A request for voluntary discovery does not necessarily delay the setting of any case for trial. Certainly it is clear in this case that the request did not in fact delay the scheduling of trial.

Should either the state or defendant be required to move the court for a discovery order so that discovery does become a court proceeding and if this proceeding results in a delay in scheduling the trial, I would have no quarrel with excluding the delay from the running of the speedy trial statutory period. This, however, is not the case before us.

To hold that defendant's mere request for voluntary discovery which did not in fact result in any delay in scheduling the trial nevertheless tolls the running of the Speedy Trial Act period both emasculates the act and places an extraordinarily high price on engaging in voluntary discovery, particularly for a defendant who, as here, is in jail awaiting trial. I am confident the legislature never envisioned such results when it provided for speedy trials and criminal discovery.

I note that the state did not assert either at trial or in the Court of Appeals that the Speedy Trial Act period should be tolled upon defendant's filing a motion for voluntary discovery. The state never contended in the trial court that the trial was delayed because of defendant's request for voluntary discovery. It makes the argument for the first time in this Court.

My vote, therefore, is to conclude, as did the Court of Appeals, that the matter should be remanded to the trial court to determine whether to dismiss the indictment with or without prejudice because trial was not had within the 120-day period prescribed by the Speedy Trial Act.

Justice FRYE joins in this dissenting opinion.