STATE OF NORTH CAROLINA v. JAMES ERVIN THOMPSON, JR.

No. 8410SC139

(Filed 19 February 1985)

1. **Searches and Seizures § 3— van—no legitimate expectation of privacy**

    Defendant failed to demonstrate a legitimate expectation of privacy in a van that was searched and therefore failed to show any infringement of his Fourth Amendment rights where defendant specifically testified that he did not own the van, that he never owned it, and that he did not know what items were in the van; he did not acknowledge ownership of any particular item inside the van; and there was no evidence that any item seized, other than a coat which was seized on a subsequent search, was taken from a duffle bag as opposed to some open area of the van.

2. **Criminal Law § 91— speedy trial—exclusion of time involving discovery**

    Though defendant was not tried within the 120-day time period of the Speedy Trial Act, he was nevertheless brought to trial within apt time where the trial court properly excluded the period of delay resulting from defendant's request for discovery and the State's efforts to comply.

3. **Criminal Law § 93— corroborating testimony—order of admission—no error**

    The trial court did not err in allowing a detective to testify prior to a witness whose testimony the detective was supposed to corroborate, since,

when the admissibility of evidence depends upon some preliminary showing, the trial judge may permit its introduction upon counsel's assurance that such showing will be forthcoming.

**4. Criminal Law § 71— purpose of travel—shorthand statement of fact**

    Testimony by a codefendant that he, defendant, and others agreed to leave St. Louis and come to Raleigh for the purpose of committing burglaries was properly admitted by the trial judge as a shorthand statement of fact and was not excludable as being conclusory.

APPEAL by defendant from *Farmer, Judge.* Judgments entered 25 October 1983 in Superior Court, WAKE County. Heard in the Court of Appeals 16 October 1984.

*Attorney General Edmisten, by Assistant Attorney General Archie W. Anders, for the State.*

*Yeargan, Thompson & Mitchiner, by W. Hugh Thompson, for defendant appellant.*

BECTON, Judge.

I

Principally on the basis of the testimony of co-defendant, William Nobe, the defendant, James Thompson, Jr., was convicted of thirty-four separate charges—one charge of breaking or entering, fourteen charges of second degree burglary, twelve charges of felonious larceny, one charge of possession of implements of housebreaking, one charge of safecracking, and five charges of conspiracy to commit burglary—and was given active prison sentences totalling 105 years.

Having reason to believe that defendant was a member of a well-known Medina gang, which operated out of St. Louis, Missouri, and which was considered responsible for hundreds of burglaries in the southeastern United States, and having a hunch, but no real evidence, that defendant had been involved in a recent breaking and entering in Raleigh, law enforcement officers stopped the 1978 GMC van defendant was driving, detained defendant at the scene for approximately four hours until a search warrant was obtained, and then searched the van. The search revealed nothing considered by the officers at that time to be important, except two screwdrivers, two pairs of gloves, one flashlight, and one pair of tennis shoes. Having seized those items

in the search, Raleigh police officers charged defendant with possessing burglary tools. The following day, Raleigh police detectives found a brown button at the scene of a recent burglary. Recalling that the search of defendant's 1978 GMC van the previous day had also revealed the existence of a coat missing a button similar to the one found at the burglary scene, the officers obtained a second search warrant and seized the coat as well as other items from the van.

Based on the testimony of William Nobe, the co-defendant turned State's evidence, the State's theory was simple — Sam Medina, William Nobe, and the defendant, came to Raleigh in the summer of 1982 to burglarize homes. They registered in motels under false names and then drove through "exclusive" neighborhoods picking out homes to burglarize. When the list was completed, the three would go to a public library and secure telephone numbers from the Raleigh City Directory. When they discovered, by telephoning, that the homes were not occupied, they would burglarize them. Using the same modus operandi, the three came back to Raleigh in February 1983 to burglarize more homes. Defendant was indicted on 14 March, 25 April and 20 June 1983 on the various charges.

## II

Although defendant brings forward several assignments of error concerning the admission of evidence and the sufficiency of evidence on the burglary charges, defendant's primary arguments on appeal relate to the denial of his motions to suppress evidence. Defendant contends that he had a legitimate expectation of privacy in the area searched; that neither affidavit sets forth sufficient facts to support a determination by the magistrate that probable cause existed for the searches; and that the second affidavit is defective for the additional reason that it is the "tainted fruit of the first search." For the reasons that follow, we find no error in defendant's trial.

## III

A.  27 February 1983 Stop and Search

On 27 February 1983, the defendant and William Nobe were observed by City of Raleigh detectives placing filled duffle bags and gym bags in a 1978 GMC van while it was parked at the

Howard Johnson Motel at Crabtree Valley. Defendant drove the van from the motel through Raleigh and was later stopped on Highway 70 in Garner. Defendant was charged with improper use of a traffic lane and driving without being licensed as an operator by the North Carolina Department of Motor Vehicles, but those charges were later dismissed. Defendant, as driver of the van, and Nobe, as passenger, were detained at the scene for approximately four hours while detective Williams of the Raleigh Police Department obtained a search warrant, listing defendant and Nobe as persons to be searched and the van as the vehicle to be searched. The 27 February 1983 search warrant is titled "In the Matter of: Thompson & Nobe" and the accompanying inventory of seized property is titled: "In the Matter of James Ervin Thompson." The application for the search warrant contains a long affidavit of detective Williams, which we need not discuss, considering our disposition of the "legitimate expectation of privacy" issue in part IV, *infra*.

B.    The 28 February 1983 Search Warrant

On the following day, Raleigh police detectives applied for a second search warrant to search the 1978 GMC van and executed an affidavit in support of the search warrant. This second search warrant was titled: "In the Matter of James Ervin Thompson, Jr." and the inventory of seized property noted that James Ervin Thompson, Jr., was the "owner of the place searched, from whom the items were seized or in apparent control."

Upon defendant's motion to suppress evidence and testimony relating to items found or observed during the two searches of the van, the trial court, at a pre-trial suppression hearing, denied the motions to suppress on the basis that defendant had not shown any "expectation of privacy in the van or its contents and; therefore, [had] failed to make a showing that the Fourth amendment was even applicable to the alleged search and seizure in this case."

IV

[1]    Although the probable cause issues raised by defendant appear to have merit, we do not reach them, because defendant has failed to carry his threshold burden of showing that the State infringed his individual Fourth Amendment rights. *Rakas v. Illinois*, 439 U.S. 128, 58 L.Ed. 2d 387, 99 S.Ct. 421 (1978); *State v. Green-*

*wood,* 301 N.C. 705, 273 S.E. 2d 438 (1981); *State v. Melvin,* 53 N.C. App. 421, 281 S.E. 2d 97 (1981), *cert. denied,* 305 N.C. 762, 292 S.E. 2d 578 (1982). In other words, "a defendant is obliged to show that he had a legitimate expectation of privacy in the area searched before he can invoke the protection of the Fourth Amendment." *United States v. Smith,* 621 F. 2d 483, 486 (2d Cir. 1980), *cert. denied,* 449 U.S. 1086, --- L.Ed. 2d ---, --- S.Ct. --- (1981).

The old automatic standing rule—permitting the defendant to suppress evidence when he was "legitimately on [the] premises where a search occur[red]," *Jones v. United States,* 362 U.S. 257, 267, 4 L.Ed. 2d 697, 706, 80 S.Ct. 725, 734 (1960)—was rejected in *United States v. Salvucci,* 448 U.S. 83, 65 L.Ed. 2d 619, 100 S.Ct. 2547 (1980). The *Salvucci* Court stated: "The person in legal possession of a good seized during an illegal search has not necessarily been subject to a Fourth Amendment deprivation. . . . [A]n illegal search only violates the rights of those who have 'a legitimate expectation of privacy in the invaded place'." 448 U.S. at 91-2, 65 L.Ed. 2d at 627-8, 100 S.Ct. at 2552-3 (quoting *Rakas v. Illinois,* 439 U.S. at 143, 58 L.Ed. 2d at 401, 99 S.Ct. at 430).

At the hearing on his motion to suppress, the defendant in this case specifically testified that he did not own the van, that he never owned it, and that he did not know what items were in the van. Further, the defendant did not acknowledge ownership of any particular item inside the van, including the duffle and gym bags.

Defendant argues that he should prevail because he introduced the search warrant, the affidavit in support of the search warrant, and the inventory of seized property, all of which refer to him, or as in the case of the second inventory of seized property, list him as "the owner of the place searched, from whom the items were seized or in apparent control." We are not persuaded, considering (a) the testimony at the suppression hearing; (b) the absence of evidence that defendant owned or ever possessed any items seized, including the green coat; and (c) the absence of evidence that any item seized, other than the green coat, came from a duffle bag as opposed to some open area of the van.

In *United States v. Smith,* quoted above, the defendant, who was driving the car, did not own the car, denied any ownership interest in the property seized from the trunk, and argued that he had no knowledge of any property in the trunk. Finding that *Smith* took no precautions to maintain any privacy in any area of the car, the *Smith* Court concluded that Smith had no legitimate expectation of privacy in the trunk of the car. In *United States v. Goshorn,* 628 F. 2d 697 (1st Cir. 1980), the United States Court of Appeals for the First Circuit said:

> Since appellee was not the registered owner of the Valiant, he was required to establish his personal interest in the parcel by asserting either that he had placed it in the trunk or that he had some possessory interest in the contents of the bags. This he did not do. Furthermore, with respect to the parcel itself, the record is silent on whether the bags were sealed or otherwise secured in such a manner that would support an inference of a reasonable expectation of privacy.

*Id.* at 701.

Likewise, the defendant in this case has failed to show any infringement of his Fourth Amendment rights. He failed to carry his threshold burden of demonstrating a legitimate expectation of privacy in the van that was searched. As a result of our holding, it is not necessary to reach the probable cause issues raised by the defendant, or defendant's contention that the testimony concerning the items seized and the scientific analysis performed on those items should have been suppressed.

V

[2] Defendant next argues that "the trial court committed reversible error in denying the defendant's motion to dismiss actions 83CRS13436 [possession of burglary tools], 83CRS14021 [breaking or entering and larceny], and 83CRS23969 [conspiracy to commit burglary] because defendant was not tried on said charges within the time period of the speedy trial act." We reject this argument.

It is true that defendant was not tried within the 120-day time period set forth in N.C. Gen. Stat. Sec. 15A-701(a)(1) (1983). The trial court excluded the period of delay resulting from defendant's request for discovery and the State's efforts to comply.

On the basis of N.C. Gen. Stat. Sec. 15A-701(b) (1983) and *State v. Marlow*, 310 N.C. 507, 313 S.E. 2d 532 (1984), the trial judge was correct.

G.S. Sec. 15A-701 (1983) reads, in relevant part:

(b) The following periods shall be excluded in computing the time within which the trial of a criminal offense must begin:

(1) Any period of delay resulting from other proceedings including, but not limited to, delays resulting from:

. . .

d. Hearings on any pretrial motions or the granting or denial of such motions.

The period of delay under this subdivision must include all delay from the time a motion or other event occurs that begins the delay until the time a judge makes a final ruling on the motion or the event causing the delay is finally resolved . . . .

With regard to this statute, the *Marlow* Court said:

After careful consideration, we have determined that the Speedy Trial Act's rule of exclusion, specifically subsection (b) of section 701, should include the period of delay resulting from a defendant's request for discovery. This excludable discovery period shall commence upon the service of defendant's motion for request for discovery upon counsel for the State, and shall encompass only such time which occurred after the speedy trial period has been triggered. . . . Furthermore, there are various circumstances in which the investigative process is hindered by the secretion, disposition or attempted elimination of evidence by not only interested parties, but also by innocent persons unaware of the significance of such information.

Our decision to exclude discovery time does not force the defendant to anxiously await, at the mercy of the State, the completion of discovery within a reasonable time. The State remains bound not only by requirements of good faith to proceed in a timely manner, but also by the defendant's ability to compel earlier discovery, pursuant to N.C. Gen. Stat. Sec. 15A-909.

310 N.C. at 515-6, 313 S.E. 2d at 537-8.

Findings of fact by the trial judge are conclusive on appeal when supported by competent evidence. *State v. Jackson*, 306 N.C. 642, 295 S.E. 2d 383 (1982). In this case, the trial judge made twenty-three findings of fact, all of which were supported by the evidence. Based on these findings of fact, the trial court concluded that the defendant had been brought to trial within the time limits established by G.S. Sec. 15A-701 (1983). We agree, and conclude that the trial court properly denied defendant's motion to dismiss the case based on speedy trial violations.

## VI

We summarily reject defendant's arguments concerning the admission of evidence.

[3]  A. We find no error in the trial court's decision to allow detective Williams to testify prior to witness Nobe, when detective Williams's testimony was offered to corroborate the anticipated testimony of witness Nobe. When the "admissibility of evidence depends upon some preliminary showing, [the trial judge may] permit its introduction upon counsel's assurance that such showing will be forthcoming." 1 H. Brandis, Jr., *North Carolina Evidence* Sec. 24, at 87-8 (2d rev. ed. 1982); *see State v. Hinson*, 310 N.C. 245, 311 S.E. 2d 256 (1984). Considering the cited authority and the trial court's cautionary instructions which follow, we find no error:

> Members of the jury, any testimony by this witness as to what Mr. Nobe told him is offered for the sole purpose of corroborating the testimony of Mr. Nobe when he testifies later, if in fact it does corroborate, and for that purpose only.

[4]  B. Witness Nobe's testimony that he, defendant, and others agreed to leave St. Louis and come to Raleigh for the purpose of committing burglaries was properly admitted by the trial judge as a "shorthand statement of the fact" and was not excludable as being "conclusory." *See* 1 H. Brandis, Jr., *supra*, Sec. 125.

C. We reject defendant's contention that the trial court erred in admitting a fingerprint card into evidence, and in admitting certain testimony concerning the fingerprint card, since our review of the record reveals that a proper foundation was laid for

the introduction of the fingerprint card and the corresponding testimony.

D. We also reject defendant's final assignment of error concerning the trial court's admission of testimony with regard to how much time detective Williams spent investigating this case. Even if the testimony is irrelevant and immaterial, it was, in any event, not prejudicial.

## VII

Finding that the State proved all essential elements of each crime, that the questioned indictments support the charges of second degree burglary, and that the trial court did not err in failing to submit breaking or entering as a lesser included offense of burglary, we summarily reject defendant's next two assignments of error.

For the foregoing reasons, we find

No error.

Chief Judge HEDRICK and Judge PHILLIPS concur.