351 S.E.2d 823 (1987)
83 N.C. App. 68
STATE of North Carolina
v.
Bruce David STROHAUER.
No. 865SC415.
Court of Appeals of North Carolina.
January 20, 1987.
*825 Atty. Gen. Lacy H. Thornburg by Associate Atty. Gen. Kathryn L. Jones, Raleigh, for the State.
Murchison, Taylor & Shell by Michael Murchison, Wilmington, for defendant-appellant.
ARNOLD, Judge.
During cross-examination of Ms. Strohauer, defendant's attorney questioned her as to the length of an affair she had with another party. She responded, "I seen him a couple of weeks while my husband was in prison." The last part of her statement concerning her husband's criminal record was unresponsive to the question and contained evidence tending to show that defendant had committed a prior offense. The State cannot offer such evidence because it is logically irrelevant to proving the crime with which defendant is currently charged. State v. McClain, 240 N.C. 171, 81 S.E.2d 364 (1954); State v. Moore, 51 N.C.App. 26, 275 S.E.2d 257 (1981).
The trial court, however, immediately instructed the jury not to consider the witness's answer in any way. In State v. Young, 302 N.C. 385, 275 S.E.2d 429 (1981), our Supreme Court held that where there was an unresponsive answer disclosing that defendant had committed a prior murder, and the trial court gave an immediate instruction that the statement should not be considered, the trial court did not err in denying defendant's motion for a mistrial where the evidence of defendant's guilt was overwhelming and uncontradicted.
In the case sub judice, the evidence was overwhelming and uncontradicted. Defendant's wife testified that her husband admitted doing the acts with which he was charged. The gun found by defendant's wife and the money given to her by defendant were identified by Mr. Thornton as being items stolen from his home. The trial court did not err in denying defendant's motion for a new trial based on the unresponsive answer.
Next defendant argues that the trial court committed reversible error by allowing the chief prosecution (State's) witness's tearful and emotional reading of a letter over defendant's objection. Defendant's contention on this matter is that defendant was severely prejudiced by Ms. Strohauer's "emotional display" while reading a letter that she had written to her husband. As she read the letter, she became increasingly tearful and had to pause twice before continuing. Defendant claims that the trial judge should have taken steps to eliminate any prejudice.
In support of his argument, defendant cites State v. Dais, 22 N.C.App. 379, 206 S.E.2d 759 (1974).
State v. Dais, however, is not controlling here. In Dais, the court had to call a short recess because the rape victim involved in the case was crying and so emotionally upset that she could not regain her composure. During the recess, the victim's father assaulted the defendant while several of the jurors were present. Also, several jurors saw an ambulance arrive and at *826 least one juror saw the victim leave in the ambulance.
The Court of Appeals held that the trial court corrected any possible prejudice from this activity by polling the jury as to their ability to remain impartial. Id. The emotional reading of the letter in the case sub judice, however, did not rise to the level of events in Dais. It was not necessary for the judge to take such action.
Defendant next contends that the trial court erred by imposing judgment on both the larceny and safecracking offenses since the offense of safecracking as charged in the indictment is not a separate offense from that of felonious larceny. Defendant argues that punishment for both offenses constitutes double jeopardy under the North Carolina and United States Constitutions. We disagree.
The essential elements required for a conviction of larceny are that the defendant: (1) took the property of another; (2) carried it away; (3) without the owner's consent; and (4) with the intent to deprive the owner of his property permanently. State v. Perry, 305 N.C. 225, 287 S.E.2d 810 (1982); G.S. 14-72(a). The essential elements of the crime of safecracking are listed in G.S. 14-89.1:
(a) A person is guilty of safecracking if he unlawfully opens, enters, or attempts to open or enter a safe or vault:
(1) By the use of explosives, drills, or tools; or
(2) Through the use of a stolen combination, key, electronic device, or other fraudulently acquired implement or means; or
(3) Through the use of a master key, duplicate key or device made or obtained in an unauthorized manner, stethoscope or other listening device, electronic device used for unauthorized entry in a safe or vault, or other surreptitious means; or
(4) By the use of any other safecracking implement or means.
(b) A person is also guilty of safecracking if he unlawfully removes from its premises a safe or vault for the purpose of stealing, tampering with, or ascertaining its contents.
Defendant Strohauer was charged with felonious larceny by the following indictment:
[T]he defendant named above unlawfully, willfully, and feloniously did steal, take and carry away a safe from the residence containing documents and money in the amount of $5500.00, one (1) Remington 243 w/scope, One (1) 22 Single Shot the personal property of William Thornton having a value of $6,676.00 dollars, pursuant to the commission of felonious breaking and entering....
The relevant section of the safecracking indictment reads:
[O]n or about the date of offense shown and in the county named above the defendant named above unlawfully, willfully and feloniously did remove a safe from the premises of William Thornton ... for the purpose of stealing, tampering with and ascertaining the contents of said safe. (Emphasis added.)
Defendant argues that his convictions of both felonious larceny, for taking the safe and its contents with the intent to deprive the owner permanently, and safecracking, for the removal of the safe for the purpose of stealing its contents, placed him in double jeopardy because the crimes as charged in these indictments are the same offense.
The Double Jeopardy Clause of the North Carolina and United States Constitutions protect against (1) a second prosecution after acquittal for the same offense, (2) a second prosecution after conviction for the same offense, and (3) multiple punishments for the same offense. North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); State v. Gardner, 315 N.C. 444, 340 S.E.2d 701 (1986). Where successive prosecutions are involved, the Double Jeopardy Clause protects the individual from being subjected to further expense, embarrassment and a feeling of anxiety that he or she may be tried again for the same offense even though innocent. Gardner at 452, 340 S.E.2d at 707 (citing People v. Robideau, *827 419 Mich. 458, 355 N.W.2d 592, reh'g denied, 420 Mich. 1201, 362 N.W.2d 219 (1984)).
Different interests are involved, however, where the prosecution is for the same offense in a single trial. The issue is one of multiple punishments not successive proceedings. Defendant's only interest is that he not be subjected to more punishment than the legislature intended. Double jeopardy does not prohibit multiple punishments for the same offenses where both are tried at the same time and the legislature clearly intended them to be punished separately. Id. at 455, 340 S.E.2d at 709. The Double Jeopardy Clause restrains the prosecutor and the court, but not the legislature. Brown v. Ohio, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). Legislative intent is determinative on this issue. Id., 315 N.C. at 452, 340 S.E.2d at 707 (citing People v. Robideau, 419 Mich. 458, 355 N.W.2d 592, reh'g denied, 420 Mich. 1201, 362 N.W.2d 219 (1984)).
Defendant correctly points out that the general rule in North Carolina for determining whether certain crimes are separate and distinct offenses is based on Blockburger v. U.S., 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). The rule states that in order to show separate and distinct offenses, there must be proof of an additional fact required for each conviction. It is not enough to show that one crime requires proof of a fact that the other does not. Each offense must include an element not common to the other. Id.; State v. Murray, 310 N.C. 541, 313 S.E.2d 523 (1984); State v. Gardner, 315 N.C. 444, 340 S.E.2d 701 (1986); State v. Brown, 308 N.C. 181, 301 S.E.2d 89 (1983); State v. Perry, 305 N.C. 225, 287 S.E.2d 810 (1982); State v. Glenn, 51 N.C.App. 694, 277 S.E.2d 477 (1981). Producing evidence that only one of the crimes requires proof of an additional fact would seem only to show a lesser included offense.
In the present case, the safecracking indictment was worded in a way that seems to require roughly the same elements as larceny. As written, each indictment does not require proof of an additional fact which the other does not.
The Blockburger test, however, is not dispositive on the issue of legislative intent in single prosecution cases. When utilized, the Blockburger test, "may be rebutted by a clear indication of legislative intent; and, when such intent is found, it must be respected, regardless of the outcome of the application of the Blockburger test." Gardner, 315 N.C. at 455, 340 S.E.2d at 709.
As noted, the application of the Blockburger test in the present case does not produce evidence of separate offenses. Therefore, the statutes are next examined to see if they explicitly authorize multiple punishments. Since no such explicit authorization is found, the Gardner test for determining legislative intent must be applied. State v. Freeland, 316 N.C. 13, 340 S.E.2d 35 (1986). When the question of multiple punishments for two convictions in the same trial is the only concern, the Gardner test states that the traditional means for determining legislative intent "include the examination of the subject, language, and history of the statutes." Gardner, 315 N.C. at 461, 340 S.E.2d at 712.
It is important to note that the language taken from the safecracking statute and used in the indictment in the present case was not added until 1977. 1977 N.C.Sess. Laws Ch. 1106. Before this addition, there was no question that felonious larceny and safecracking were separate offenses. Our judiciary had always treated them as such. See State v. Ball, 277 N.C. 714, 178 S.E.2d 377 (1971); State v. Johnson, 7 N.C.App. 53, 171 S.E.2d 106 (1969).
Therefore, the determining factor is whether upon amending G.S. 14-89.1 the legislature intended to continue to impose multiple punishments for both felonious larceny and safecracking. The legislature's stated purposes for amending G.S. 14-89.1 were "... to clarify the elements of the crime of safecracking, make it apply when the safe or vault is unlawfully *828 opened without the use of force, and extend the crime to cover haulaways." 1977 N.C.Sess.Laws Ch. 1106.
Nowhere among these stated purposes did the legislature mention abolishing the clearly established treatment of safecracking and felonious larceny as separately punishable offenses. Such a deviation from the historical treatment of these crimes as separately punishable offenses would have been the most substantial change created by the amendment and would have been foremost in the legislature's list of purposes.
In addition to the fact that such intent is absent from the legislature's list of purposes, it is important to note that after the 1977 amendment, the judiciary continued to impose multiple punishments for the offenses. See State v. Thompson, 73 N.C. App. 60, 325 S.E.2d 646 (1985) (where the indictment for safecracking was identical to the indictment in the case sub judice). If the legislature had intended to abolish separate punishment for these crimes, they easily could have responded to the judicial interpretation of the statute and addressed the matter in the nine years since the amendment was enacted.
We conclude that the legislature clearly intended felonious larceny and safecracking to remain separately punishable offenses. Defendant, at a single trial, may be convicted of both crimes as charged in the indictments.
Defendant's last contention is that the trial court erred in denying his motion for dismissal on the grounds that the State's evidence was insufficient as a matter of law to support conviction. After a careful examination of the record, we find defendant's last contention to be without merit.
For the reasons set forth above, we find
No error.
JOHNSON and EAGLES, JJ., concur.