STATE OF NORTH CAROLINA v. TERRY RAY JONES

No. 9218SC1025

(Filed 19 October 1993)

1. **Evidence and Witnesses § 1255 (NCI4th)— confession— invocation of right to counsel—conversation initiated by defendant**

    The trial court properly denied defendant's motion to suppress his inculpatory statement in a prosecution for breaking and entering and larceny where defendant was arrested at approximately 1:05 p.m. and taken to the Greensboro Police Department; defendant waived his Miranda rights and answered questions from the officers until approximately 1:50 p.m., when he stopped answering questions and asked to see an attorney; one or more officers indicated that the only attorney who might be available then was an assistant district attorney; defendant agreed to talk with an assistant district attorney, but the officers did not bring one in to talk with him; the officers stopped the interrogation and left defendant in the interrogation room until about 7:00 p.m., when they obtained a search warrant for his apartment; defendant was taken with the officers to execute the search warrant; he was seated handcuffed on the living room couch next to a detective while other officers searched the apartment and could see and hear virtually everything going on in the apartment; there was general conversation between defendant and the detective including a request for a cigarette, which was granted; the court found that none of that conversation was calculated to induce defendant to make incriminating statements; and defendant told the detective that he would show the officers which items were stolen after he saw that the whole process of the search and the officers' questions was upsetting his girlfriend and daughter and making them cry.

STATE v. JONES

[112 N.C. App. 337 (1993)]

Am Jur 2d, Arrest §§ 75-77; Criminal Law §§ 788 et seq.; Evidence §§ 555-557, 614.

Admissibility of confession or other statement made by defendant as affected by delay in arraignment—modern state cases. 28 ALR4th 1121.

2. Arrest and Bail § 115 (NCI4th)— warrantless arrest— unnecessary delay in taking defendant before judicial official—no causal connection with incriminating statement

The trial court properly denied defendant's motion to sup-. press incriminating statements where defendant was arrested at approximately 1:05 p.m. and questioned until about 1:50 p.m., when he asked to see an attorney; he was told that the only attorney available was an assistant district attorney; he was left in the interrogation room until about 7:00 p.m.; and then he was taken with officers while they searched his apartment, during which time he made incriminating statements. Although the Court of Appeals disapproved of the practice of law enforcement officers holding uncharged defendants without promptly taking them before the magistrate as required by N.C.G.S. § 15A-501(2), and the practice of taking uncharged and uncounselled defendants with police officers when executing search warrants at defendants' premises, it could not be said as a matter of law that defendant's incriminating statements would not have been obtained but for the officers' violations of G.S. 15A-501(2) and (5) and defendant did not argue below that he would not have made the incriminating statements had he been taken before a judicial official and advised of his right to communicate with counsel and friends pursuant to the statute.

Am Jur 2d, Arrest §§ 75-77; Criminal Law §§ 788 et seq.; Evidence §§ 555-557, 614.

Admissibility of confession or other statement made by defendant as affected by delay in arraignment—modern state cases. 28 ALR4th 1121.

Appeal by defendant from judgment signed 30 April 1992 by Judge Judson D. DeRamus, Jr. in Guilford County Superior Court. Heard in the Court of Appeals on 1 September 1993.

## STATE v. JONES

[112 N.C. App. 337 (1993)]

Defendant was convicted of three counts of felonious breaking and entering, G.S. 14-54(a), and three counts of felonious larceny, G.S. 14-72(b)(2). Defendant was sentenced to 3 consecutive ten year terms for the three felonious larceny counts with three ten year terms for breaking and entering running consecutively. Over objection and defendant's motion to suppress, the trial court admitted defendant's written confession and other statements he made to officers during the execution of a search warrant for his apartment. Defendant appeals.

At the conclusion of the suppression hearing, the trial court found the following facts: On 25 July 1991, law enforcement officers arrested defendant at approximately 1:05 p.m. and took him to the Greensboro Police Department. Defendant waived his Miranda rights and answered questions from the officers until approximately 1:50 p.m. Defendant then stopped answering questions and asked to see an attorney. When defendant stated that he did not have a particular attorney, one or more officers indicated that the only attorney that might be available to him then was an assistant district attorney. Defendant agreed to talk with an assistant district attorney, but the officers did not bring one in to talk with him.

The officers stopped the interrogation and left defendant in the interrogation room until about 7:00 p.m. when they obtained a search warrant for his apartment. After obtaining the search warrant, the officers took the defendant with them to execute the search warrant for his apartment. Defendant was seated handcuffed on the living room couch next to Detective Lee Walker while other officers searched the apartment. From the couch, defendant could see and hear virtually everything going on in the apartment. During the search, there was general conversation between defendant and Detective Walker including, "a request for a cigarette by the defendant and compliance with and assistance with that request by Officer Walker." The court found that although there was further conversation between defendant and Detective Walker, none of that conversation was calculated to induce defendant to make incriminating statements. The court also found that defendant made no incriminating statements during this conversation with Detective Walker.

Defendant's live-in girlfriend Rhonda Huggins and his infant daughter were also in the apartment. In searching for the stolen items, the officers began asking Ms. Huggins which items were

hers, and which items belonged to defendant. Ms. Huggins cooperated, but was visibly upset by the questioning. When defendant saw that the whole process of the search and the officers' questions was upsetting his girlfriend and daughter and making them cry, he told Detective Walker that he would show the officers which items were stolen. Specifically, the trial court found that:

[T]he defendant upon observing Rhonda Huggins and the child . . . crying in the process that they were being put through by the law enforcement officers . . . and as a proximate result of seeing this procedure, the defendant decided to initiate further conversation with law enforcement officers present at the search scene . . . so they would not bother or ask Rhonda Huggins further about other items. . . .

[T]he defendant initiated this conversation with the officers as a proximate result of his concern for his family . . . and not by reason of any conversation he had with Officer Lee Walker or any other officer. . . . [T]here was no improper initiation of any further interrogation by the law enforcement officers during the search.

After defendant showed the officers which items were stolen, they took him back to the police station, where the officers again advised defendant of his Miranda rights. Defendant signed a waiver form waiving those rights and then made a written confession. He also signed a statement indicating that he initiated the conversation with Detective Walker. When defendant finished making his statement shortly after 8:30 p.m., he was taken to the hospital for tests pursuant to the search warrant and then to McDonald's for something to eat. Finally, between 11:45 p.m. and midnight of 25 July 1991, defendant was taken for his first appearance before a magistrate. The court found that between 1:50 p.m. and 7:00 p.m. there was an unnecessary delay in taking defendant before a magistrate in violation of G.S. 15A-501(2). The court also found that there was a violation of G.S. 15A-501(5), because by 1:50 p.m. defendant had not been advised of his right to communicate with counsel and friends, nor had he been given any time or opportunity to do so until 7:00 p.m. However, the court found that the unnecessary delays in violation of G.S. 15A-501(2) and (5) did not proximately cause defendant's initiation of new conversations with Detective Walker, and that the delays did not proximately cause

defendant to make the additional statements he made at the police station.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Rebecca B. Barbee, for the State.*

*McNairy, Clifford & Clendenin, by Robert O'Hale, for defendant-appellant.*

EAGLES, Judge.

Defendant's only assignment of error is that the trial court erred in allowing into evidence the statements that he made to police officers after he requested an attorney. We disagree.

[1] Defendant first challenges the trial court's finding of fact that defendant initiated the conversation with law enforcement officers that resulted in the incriminating statements that he made in his apartment. In *Edwards v. Arizona*, 451 U.S. 477, 68 L.Ed.2d 378 (1981), the United States Supreme Court held that once an accused asserts his right to counsel, the police may not further interrogate him until an attorney has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police. Here, the trial court found that defendant initiated the additional conversation. The trial court's findings of fact are conclusive on appeal if they are supported by competent facts in the record. *State v. Tann*, 302 N.C. 89, 98, 273 S.E.2d 723, 726 (1981); *State v. Gray*, 268 N.C. 69, 70, 150 S.E.2d 1, 8 (1966).

Defendant testified on *voir dire* that Detective Walker sat beside him on the couch and said, "You've got a nice place here," to which defendant responded, "Thank you." Defendant then testified that Detective Walker asked him, "What happened? . . . Why did you get in trouble?" Defendant testified that he responded, "Cocaine had a lot to do with it." Defendant contends that Detective Walker's statements were the initiation of the conversation that led defendant to make the subsequent incriminating statements.

Detective Walker testified on *voir dire* that the conversation on the couch was begun when defendant asked him if he could smoke. Detective Walker testified that he gave defendant a cigarette and lit it for him. Detective Walker also testified that both he and defendant could hear the other officers asking Ms. Huggins which items were hers and which items were his. He further testified

that after awhile, defendant said, "I've messed up, and I'm in big trouble, and I'll tell you about it."

Although the testimony regarding who started the conversation on the couch is conflicting, there is sufficient evidence in the record to support the trial court's findings of fact. The trial court found that some general conversation took place between defendant and Detective Walker on the couch during the execution of the search warrant, "including a request for a cigarette by the defendant and compliance with and assistance with that request by Officer Walker." The court found, however, that none of that conversation was calculated to induce defendant to make incriminating statements. The trial court also found that defendant made no incriminating statements during that conversation. These findings of fact are consistent with and supported by Detective Walker's testimony. We conclude that there is sufficient competent evidence to support the trial court's findings of fact.

Defendant further argues that when considering the totality of the circumstances, the actions of the police officers after defendant had requested an attorney at 1:50 p.m. constituted the functional equivalent of an interrogation. In *Rhode Island v. Innis*, 446 U.S. 291, 64 L.Ed.2d 297 (1980), the United States Supreme Court defined interrogation under *Miranda* to refer not only to express questioning

> but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police.

*Id.* at 301, 64 L.Ed.2d at 308 (footnotes omitted).

Defendant argues that after he requested an attorney, he was left alone in the interrogation room from 1:50 p.m. until 7:00 p.m. without being given an opportunity to consult with a lawyer. He further argues that at 7:00 p.m., police officers took him with them to watch them execute the search warrant for his apartment. Defendant said that he volunteered to tell the officers which items were stolen, because he saw that his girlfriend and daughter were very upset, and he did not want to put them through any more pain. Defendant alleges that the police officers knew that defend-

**STATE v. JONES**

[112 N.C. App. 337 (1993)]

ant's girlfriend and daughter would be there, and that the only reason they took him along was to make him watch as his girlfriend and daughter were subjected to the whole process of the search. Defendant alleges that the police officers intentionally subjected him to the emotional distress of his girlfriend and daughter in the hopes that defendant would make incriminating statements. Defendant argues that all of these actions taken together constitute the functional equivalent of an interrogation, because the police should have known that these actions were "reasonably likely to elicit an incriminating response."

We cannot say as a matter of law that the police should have known that their actions taken together would elicit an incriminating response from defendant. In deciding this issue, we focus primarily on the perceptions of the defendant, rather than the intent of the officers. *Rhode Island v. Innis*, 446 U.S. 291, 301, 64 L.Ed.2d 297, 308 (1980). Defendant never testified on *voir dire* that he felt pressured into telling the officers where the stolen items were. By defendant's own testimony, he only asked to call an attorney one time after he agreed to talk with the assistant district attorney. Although defendant testified that he asked Detective Byrd if he could call an attorney sometime before he was taken to his apartment, Detective Byrd testified that defendant did not ask to call an attorney. The trial court heard the conflicting evidence and found as a fact that defendant did not ask to call an attorney. The trial court's findings of fact are conclusive on appeal when they are supported by competent facts in the record. *State v. Tann*, 302 N.C. 89, 98, 273 S.E.2d 723, 726 (1981); *State v. Gray*, 268 N.C. 69, 70, 150 S.E.2d 1, 8 (1966). Detective Byrd's testimony is competent evidence to support that finding.

Furthermore, defendant himself testified that he told Detective Walker, "Look, I'll go ahead and tell you what's stolen. I don't want to see them go through anymore." Under certain circumstances, an investigating officer's statement that a suspect's relatives may be released from custody or may not be arrested if the suspect confesses, may render the suspect's resulting confession involuntary. *State v. Lang*, 309 N.C. 512, 308 S.E.2d 317 (1983) (citing *State v. Branch*, 306 N.C. 101, 107, 291 S.E.2d 653, 658 (1982)). However, the mere desire of a defendant to protect a relative from the distress of a lawful search will not render his confession inadmissible where the desire to protect the relative and the hope of being able to do so were not suggested by the police, but originated

with the accused. *State v. Lang, supra.* Although defendant said he showed police which items were stolen to protect his girlfriend and daughter, the police officers had never suggested that they were in any danger of being charged or arrested. Defendant's girlfriend voluntarily cooperated with police during the search, although she was visibly upset. There is no indication in the record that defendant's girlfriend was prevented from leaving the apartment during the search. Since the officers did not threaten defendant's girlfriend or force her to cooperate, we cannot say that the officers should have known that her reaction to the search would be reasonably likely to cause defendant to make an incriminating statement. Accordingly, we hold that these acts do not constitute the functional equivalent of an interrogation.

[2]    Finally, defendant argues that his statements should have been suppressed because they were the result of a substantial violation of G.S. 15A-501(2) and (5). G.S. 15A-501(2) states that a person arrested without a warrant must be taken before a judicial official without unnecessary delay. G.S. 15A-501(5) states that a person must be advised of his right to communicate with counsel and friends without unnecessary delay, and that he must be allowed a reasonable time and opportunity to do so. The trial court found unnecessary delays in taking defendant before a judicial official and in advising him of his right to communicate with counsel and friends. However, the trial court also found that these unnecessary delays did not proximately cause defendant's incriminating statements.

Evidence obtained as a result of a substantial violation of Chapter 15A may be suppressed. G.S. 15A-974(2). However, G.S. 15A-974(2) requires at a minimum that a "but-for" causal relationship exist between the violation of the statute and the acquisition of the evidence sought to be suppressed. *State v. Richardson,* 295 N.C. 309, 322, 245 S.E.2d 754, 763 (1978). The evidence must be such that it would not have been obtained but for the police's unlawful conduct. *Id.* The trial court found that the violations of G.S. 15A-501(2) and (5) were not proximately related to defendant's incriminating statements.

We disapprove of the practice of law enforcement officers holding uncharged defendants without promptly taking them before the magistrate as required by G.S. 15A-501(2). We also do not approve the practice of law enforcement officers taking uncharged

and uncounselled defendants along with police officers when° executing search warrants at defendants' premises. However, on the facts before us, we cannot say as a matter of law that defendant's incriminating statements would not have been obtained but for the officers' violations of G.S. 15A-501(2) and (5). Defendant did not argue below that he would not have made the incriminating statements had he been taken before a judicial official and advised of his right to communicate with counsel and friends pursuant to the statute. Since defendant did not argue a causal connection between the violations of G.S. 15A-501(2) and (5) and his incriminating statements, the trial court properly denied suppressing the statements under G.S. 15A-974(2). Accordingly, we find no error.

No error.

Judges GREENE and LEWIS concur.