STATE OF NORTH CAROLINA v. JAMES NATHANIEL LITTLE, JR.

No. COA98-873

(Filed 15 June 1999)

### 1. Confessions and Incriminating Statements— request for attorney—reading of rights—contact not re-initiated

The trial court properly held that a robbery and kidnapping defendant had waived his right to counsel and refused to suppress defendant's incriminating statements where the court found that defendant had informed an unidentified officer that he wanted an attorney; a detective without knowledge of that request met with defendant and read defendant his Miranda rights; when the detective came to the question concerning the right to talk to a lawyer, defendant said that he had told another officer that he wanted an attorney, but that he now wanted to talk about the charges; defendant executed a waiver of rights form; and defendant recited a three-page statement, signing each page. The detective was without knowledge of the earlier request for an attorney and was following police procedure; the reading of a person's rights is a normal result of an arrest and custody and does not fall under the definition of interrogation or re-initiation set out by the United States Supreme Court.

### 2. Kidnapping— sufficiency of evidence—asportation

The trial court did not err by denying defendant's motion to dismiss a kidnapping charge where, after taking the victim's money and forcing the victim to withdraw more from a teller machine, the victim was moved more than 200 feet across a parking lot, onto a street, and down a hill into a cul-de-sac. The asportation was obviously unnecessary to extract more money from the victim.

Appeal by defendant from judgment entered 9 March 1998 by Judge Howard R. Greeson, Jr. in Guilford County Superior Court. Heard in the Court of Appeals 10 May 1999.

STATE v. LITTLE

[133 N.C. App. 601 (1999)]

On 19 April 1997 Russell Wallace was robbed while using an ATM machine in Greensboro, North Carolina. Wallace had just withdrawn $50.00 from the teller machine when a person, allegedly the defendant, James Nathaniel Little, Jr., approached holding a handgun and wearing a mask. Little raised the gun and directed Wallace to give him the money he had just withdrawn and directed him to take out more money. Wallace withdrew another $100 and gave it to Little. Little then told Wallace to get back into his car. Little got into the back seat of Wallace's car while a second man appeared and got into the front seat with Wallace. Wallace was able to see the second man's face and later identified him as Carl Brian Stephens. The two men directed Wallace to drive to a cul-de-sac near the bank. Little took Wallace's billfold, which contained a credit card and the ATM card, and demanded Wallace's ATM access code. Little then walked back to the ATM machine where he unsuccessfully attempted to withdraw more money. Little then returned to the car. Soon thereafter, the police arrived and the defendant fled on foot.

Responding to an officer's call that robbery suspects were leaving the area of the bank, Officer J. A. Fulmore went toward an apartment complex where the suspects had reportedly fled. Soon after arriving, Officer Fulmore saw the defendant walking in his direction. When Officer Fulmore stopped the defendant and identified himself as a police officer, defendant told him that he was on the way back from his aunt's house. When Officer Fulmore asked defendant to return to his aunt's house for the purpose of verifying the story, defendant ran. Defendant was captured a few minutes later. A set of car keys was found in defendant's possession.

Meanwhile, Officer J.R. Franks found Stephens hiding in an automobile near the scene of the robbery. The automobile belonged to defendant's mother and defendant's wallet was found in the car. The keys found in defendant's possession fit the car in which Stephens was found. About 45 minutes later, Officer D.M. Combs brought Stephens back to the scene of the robbery where Wallace identified him as one of the persons who had robbed him. Wallace was unable to identify defendant.

Defendant was arrested and charged with one count of robbery with a dangerous weapon and one count of second degree kidnaping. On 7 July 1997, a Guilford County Grand Jury indicted defendant on both counts. Defendant was tried on 2 March 1998 in Guilford County Superior Court and plead not guilty to the charges.

Prior to the start of defendant's trial, the trial court held an evidentiary hearing on defendant's motion to suppress a statement made to officers of the Greensboro Police Department after he was arrested. According to defendant, after his arrest he informed police officers that he wanted an attorney. Defendant was then placed in an interview room at the Greensboro Police Department. Soon after, Detective Sam Jones of the Greensboro Police Department entered and began to read defendant his rights. Defendant testified that he asked Detective Jones for an attorney, but Detective Jones continued with the interview. Defendant testified that he did not give a statement to Jones, nor did he read the statement prepared by Jones that he signed.

Detective Jones testified he entered the interview room where defendant was held and advised defendant of his *Miranda* rights. According to Jones, defendant interrupted while Jones was reading defendant's *Miranda* rights. Defendant told Jones that he had told an officer previously that he wanted an attorney, but had since changed his mind and wanted to talk. Jones testified that he had no prior knowledge that defendant had requested an attorney. Jones testified that he asked defendant to write out the statement, but defendant declined and asked Jones to write the statement instead. Jones testified that at no time did defendant request an attorney. It was not until after Jones had read defendant his rights and a waiver statement and defendant indicated he understood both and signed the waiver, that Jones asked for defendant's statement.

The trial court denied the motion to suppress and entered a written order. On 4 March 1998, the jury found defendant guilty of robbery with a dangerous weapon and second degree kidnaping. The trial court made no findings of aggravating or mitigating factors and defendant was sentenced in the presumptive range. Defendant appeals.

*Attorney General Michael F. Easley, by Special Deputy Attorney General James Peeler Smith, for the State.*

*Clifford Clendenin O'Hale & Jones, LLP, by Walter L. Jones, for defendant-appellant.*

EAGLES, Chief Judge.

[1] First we consider whether the trial court erred by denying defendant's motion to suppress his statement to Detective Jones of

the Greensboro Police Department. Defendant argues that he requested counsel and that Detective Jones re-initiated contact with him in violation of his fifth amendment right to counsel by entering the interview room and reading him his rights. After careful review, we disagree.

> The fifth amendment, applicable to the states through the fourteenth amendment, *Malloy v. Hogan*, 378 U.S. 1, 12 L.Ed. 2d 653 (1964), is a protection against self-incrimination. In *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed. 2d 694 (1966), the United States Supreme Court held that this fifth amendment right is the source of the right to the presence of counsel during custodial interrogation. "Interrogation," for fifth amendment purposes, refers not only to express questioning of a suspect by the police, but also to questioning or actions that police "should know are reasonably likely to elicit an incriminating response from a suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301, 64 L.Ed. 2d 297, 308 (1980). Absent initiation by the defendant, if he invokes his right to the presence of counsel during interrogation, police may not "interrogate" the defendant further until he has been afforded the opportunity to consult with counsel. *Edwards v. Arizona*, 451 U.S. 477, 68 L.Ed. 2d 378 (1981).

*State v. Nations*, 319 N.C. 329, 330, 354 S.E.2d 516, 517 (1987).

> While we doubt that it would be desirable to build a superstructure of legal refinements around the word "initiate" in this context, there are undoubtedly situations where a bare inquiry by either a defendant or by a police officer should not be held to "initiate" any conversation or dialogue. There are some inquiries, such as a request for a drink of water or a request to use a telephone that are so routine that they cannot be fairly said to represent a desire on the part of an accused to open up a more generalized discussion relating directly or indirectly to the investigation. Such inquiries or statements, by either an accused or a police officer, relating to routine incidents of the custodial relationship, will not generally "initiate" a conversation in the sense in which that word was used in *Edwards*.

*State v. Williams*, 314 N.C. 337, 349, 333 S.E.2d 708, 716-17 (1985) (quoting *Oregon v. Bradshaw*, 462 U.S. 1039, 1045, 77 L. Ed. 2d 405, 412 (1983)). The United States Supreme Court stated that "interrogation" under *Miranda* refers to express questioning as well as any words or actions on the part of the police, "other than those normally

attendant to arrest and custody," that the police should know are reasonably likely to elicit incriminating responses from the suspect. *State v. Jones*, 112 N.C. App. 337, 342, 435 S.E.2d 574, 577-78 (1993). After the trial court establishes that the defendant re-initiated contact with police, the trial court must further make findings and conclusions that defendant waived his right to counsel under the totality of the circumstances. *State v. Jenkins*, 311 N.C. 194, 199, 317 S.E.2d 345, 348 (1984).

Here Detective Jones testified and the trial court found that Detective Jones was informing defendant of his *Miranda* rights, which Detective Jones was required to do, when defendant told Detective Jones that he wanted to talk about the charges. Detective Jones testified that defendant stated that he had told officers earlier that he wanted an attorney but that he had changed his mind and was ready to talk about the charges. Detective Jones had no prior knowledge of the defendant's earlier request for counsel and had not begun questioning defendant when defendant waived his right to counsel. The trial judge made the following pertinent findings of fact:

3. That prior to the defendant's meeting with Detective Jones, the defendant had previously informed an unidentified Greensboro police officer that he wanted an attorney.

4. That Detective Jones had no knowledge of this request.

5. That upon meeting with Detective Jones, the defendant was read his Miranda Rights.

6. That when the Detective got to the third question on the rights form, "you have the right to talk to a lawyer and to have a lawyer present with you while you are being questioned," the defendant told Detective Jones that although he had told another officer that he wanted an attorney, he had changed his mind and now wanted to talk about the charges.

7. That the defendant executed a waiver of rights form.

8. That the defendant then recited a three page statement to Detective Jones, wherein he signed each page.

From these facts, the trial court concluded that as a matter of law, defendant's statement that he had changed his mind while Detective Jones was reading defendant his *Miranda* rights was a re-initiation by defendant. Detective Jones, without knowledge of defendant's earlier request for an attorney, simply was following police procedure

and read defendant his rights. Before Detective Jones could even get through the normal arrest procedure of reading the suspect his rights, defendant stated that he had changed his mind and now wanted to talk to officers about the charges. The reading of a person's rights is a normal result of an arrest and custody and thus does not fall under the definition of "interrogation" or "re-initiation" as set out by the United States Supreme Court. *See Rhode Island v. Innis*, 446 U.S. 291, 301, 64 L.E. 2d 297, 308 (1980); *Oregon v. Bradshaw*, 462 U.S. 1039, 1045, 77 L.E. 2d 405, 412 (1983). *See also State v. Underwood*, 84 N.C. App. 408, 411, 352 S.E.2d 898, 900 (1987) (holding that an officer's delivery and reading of arrest warrants to defendant while he was in custody and after defendant's request for an attorney constituted a routine incident of the custodial relationship and was not an improper initiation of questioning by the officer), *overruled on other grounds, State v. Thompson*, 328 N.C. 477, 494, 402 S.E.2d 386, 395 (1991). Accordingly, the trial court properly held that defendant waived his right to counsel and did not suppress defendant's statements to Detective Jones. This assignment of error is overruled.

[2] Finally, we consider whether the trial court erred by denying defendant's motion to dismiss the charge of kidnaping at the close of the evidence. Defendant argues that the State's evidence shows only that the defendant, during the course of the robbery, escorted the victim from the teller machine to the victim's car where they both traveled a matter of feet before the robbery was entirely consummated. Defendant contends that the restraint and asportation were not discernible beyond the steps necessary to complete the robbery and that the trial court erred in denying the defendant's motion to dismiss because the evidence did not comport with the elements of kidnaping. We disagree.

In determining whether a kidnaping occurred, the pertinent issue is whether the removal involved is integral to the commission of the underlying offense. *State v. Joyce*, 104 N.C. App. 558, 567, 410 S.E.2d 516, 521 (1991), *cert. denied*, 331 N.C. 120, 414 S.E.2d 764 (1992). The North Carolina Supreme Court has rejected the notion that the "removal" as used in G.S. § 14-39 requires a movement "for a substantial distance." *State v. Surrett*, 109 N.C. App. 344, 349, 427 S.E.2d 124, 127 (1993) (quoting *State v. Fulcher*, 294 S.E.2d 503, 522, 243 S.E.2d 338, 351 (1978)).

Here, the asportation was not "minor" or "merely technical in nature." The victim of the robbery was moved a distance of "more than 200 feet—across a parking lot, out onto a street, and down a hill

into a cul-de-sac." Here, the defendant forced the victim away from the teller machine after having already taken the victim's money and after having forced the victim to withdraw even more money from the teller machine. The asportation was therefore obviously unnecessary to extract more money from the victim. Accordingly, the trial court did not err in denying defendant's motion to dismiss the charge of kidnaping. This assignment of error is overruled.

No error.

Judges LEWIS and HORTON concur.